UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA C. VALLES,

       Plaintiff,

v.

       Case No. 1:05-CV-66
       Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and disabled widow's insurance benefits (WIB) on the account of her deceased ex-husband, Lauro Valles, who passed away on March 9, 2004 (AR 390-91).

Plaintiff was born on October 24, 1951 and completed high school (AR 41, 72).[1] She alleged that she became disabled on July 27, 2001 (AR 41). She had previous employment as an assembler at General Motors (AR 67, 79). Plaintiff identified her disabling conditions as carpal tunnel (right and left hands), right shoulder impingement, lower back strain, lower back degeneration and neck degeneration (AR 66). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision on June 24, 2004 granting her claims in part (AR 15-23). This decision, which was later approved by the Appeals

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

Finally, in order to receive WIB, plaintiff must establish that: she is the widow of a wage earner who died fully insured; she is at least 50, but less than 60 years of age; and she is disabled, as defined in 42 U.S.C. § 423(d). 42 U.S.C. § 402(e)(1). In addition, plaintiff's disability must have commenced within seven years of the latest of the following events: the month in which the wage earner died; the last month in which plaintiff was entitled to WIB; or the last month in which there was a previous entitlement to WIB. 42 U.S.C. § 402(e)(4). *See, e.g., Carreon v. Massanari*, 51 Fed.Appx. 571, 573 n. 1 (6th Cir. 2002).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 22). Second, the ALJ found that she suffered from severe impairments of: "status post right shoulder surgery; carpal tunnel syndrome, post right release; mild degenerative changes of the thoracic and lumbar spine; obesity; depressive disorder; panic disorder" (AR 22). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22). T

At the fourth step, the ALJ concluded that plaintiff was unable to perform her past relevant work (AR 21). The ALJ made two residual functional capacity (RFC) determinations. From July 21, 2001 through December 9, 2003, plaintiff had the RFC "for well less than a full range of sedentary work, and could perform no substantial gainful activity on a regular and sustained basis" (AR 22). Then, as of December 9, 2003 there was a decrease in the medical severity of the claimant's impairments. At that time, plaintiff's impairments precluded her from:

>   lifting or carrying over 20 pounds at one time or more than 10 pounds frequently; performing overhead tasks with the right upper extremity; using air or vibrating tools; repetitive pushing, pulling, gripping or grasping; working around unprotected heights or dangerous moving machinery. In terms of limitations stemming from her mental impairment, the claimant has "mild" restrictions of daily living (performs adaptive functions such as cooking, light cleaning, shopping, caring appropriately for personal grooming and hygiene); "mild to moderate" difficulties in maintaining social functioning (communicates and interacts adequately with others, functions in social settings e.g., store clerks, has a few meaningful interpersonal relationships); and "mild to moderate" deficiencies of concentration, persistence or pace in completing tasks in a timely manner (operates a motor vehicle, attends to family finances, cognitive functions in terms of awareness, orientation, concentration, memories, fund of knowledge and simple calculations are essentially rpeserved). There are "no" documented episodes of decompensation in a work or work-like setting. As such, the claimant would have difficulty consistently carrying out complex or detailed instructions, or working closely with others. Accordingly, the claimant has the residual functional capacity for a range of relatively simple unskilled light work, that does not entail more than limited contact with co-workers or the general public.

(AR 20-21).

At the fifth step, the ALJ determined that as of December 9, 2003, plaintiff was capable of performing a range of light work (AR 23). Specifically, the ALJ found that an individual with plaintiff's limitations could perform 30,300 light positions (information clerk, gate/security guard, general clerical, order filler, supply clerk) in the lower peninsula of Michigan (AR 23). The ALJ also found that, commencing December 9, 2003, plaintiff's allegations regarding her limitations were not totally credible (AR 22).

Accordingly, the ALJ determined: (1) that plaintiff was disabled from July 27, 2001 through December 9, 2003; (2) that plaintiff was not disabled as of December 9, 2003; (3) that plaintiff did not qualify for WIB because she was not disabled during the period prescribed by law; and, (4) that plaintiff's entitlement to DIB ended on February 29, 2004, the end of the second month after her disability ceased (AR 21-23).

## III. ANALYSIS

### A.  Plaintiff's DIB claim

On appeal, plaintiff contends that "[t]he ALJ's conclusion that [plaintiff] retained the RFC to perform occupational activities within the light realm subsequent to December 9, 2003 was not in accord with substantial evidence of record."  Plaintiff's Brief at 9.  The court construes plaintiff's case as a "closed period case," i.e., one in which the ALJ determines that the claimant was disabled for a specific period of time that commenced and ended prior to the date of the ALJ's decision.  *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987).  The medical improvement standard applies to closed period cases. *See Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir. 1999) (medical improvement standard as defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i) applies to closed period cases); *Long v. Secretary of Health and Human Servs.*, No. 93-2321, 1994 WL 718540 at *2 (6th Cir. Dec. 27, 1994) ("In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled"); *Jones v. Shalala*, 10 F.3d 522, 524 (7th Cir. 1993).

"Medical improvement" is defined in § 416.994(b)(1)(i) as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

Objective medical evidence must show a discrete improvement in the claimant's condition which allows the ALJ to conclude that the claimant can perform substantial gainful activity. *See Buress v. Apfel*, 141 F.3d 875, 880 (8th Cir. 1998).

On September 16, 2002, Julie A. Dodds, M.D., performed a right shoulder arthroscopy and subacromial decompression (AR 346). Plaintiff was still visiting the doctor more than one year after the surgery. A physician's report from November 20, 2003 indicates: that plaintiff had pain in her right shoulder; the her shoulder had improvement since the surgery but was problematic when lifting objects away from her body; that plaintiff was beginning to get symptoms in her left shoulder; that she lacked approximately 20 degrees of abduction; that her movement was limited by pain; that she had 4/5 supraspinatus strength and pain with supraspinatus testing; and that she had positive impingement signs (AR 347). The doctor felt that plaintiff was suffering more discomfort than anticipated following the decompression surgery and requested an MRI to evaluate the integrity of her rotator cuff (AR 347).

Plaintiff was re-evaluated after the MRI and on December 9, 2003, her physician reported as follows:

> Mrs. Valles is a 52-year old female who comes to the clinic today for a follow-up visit regarding her right shoulder. Following her last visit Mrs. Valles was sent for an MRI. She is status post shoulder compression, but has had persistent pain. Mrs. Valles reports no change or improvement in her symptoms since her last visit. She continues to have pain and a feeling of catching when lifting objects away from her body.
>
> **Physical Examination:**
> Pulse 90, blood pressure 132/72, respiratory rate 16. She is alert and oriented x3 and in no apparent distress. She lacks approximately 20 [degrees] of abduction and forward flexion. This appears mostly limited by pain. There is no limitation with external and internal rotation. Muscle strength for supraspinatus is 4/5. She is

> also painful with this testing. External rotation is 4-/5. There is a positive Hawkins' sign and the report of catching with Neer's testing.
>
> MRI was reviewed today, which shows some increased signal in the attachment of the supraspinatus tendon.
>
> **Assessment and Plan:**
> Status post right shoulder decompression with persistent pain. Mrs. Valles' symptoms are likely due to some tendinitis she is having in her supraspinatus tendon. The overall integrity of the rotator cuff was okay. At this point Mrs. Valles is to continue with her home exercise program. It is our feeling at this point that she is not in need of any surgical intervention. We will schedule her for a follow-up visit in approximately one year. She, however, was instructed to call or follow up to see us sooner if she does not continue to progress, or is she regresses and/or runs into problems.
>
> Dr. Julie Dodds was present and fully participated in the patient's evaluation and management.

(AR 339).

The ALJ determined that plaintiff's disability ceased on December 9, 2003 (AR 18-23). In making this determination, the ALJ apparently relied on the physician's report of that date:

> On December 9, 2003, the claimant indicated that she had some ongoing pain and catching of her shoulder when lifting away from her body. At that point in time, Dr. Dodds described the claimant as appearing alert, properly oriented, and in no acute distress. The doctor believed the claimant had a degree of shoulder tendinitis. According to Dr. Dodds, the overall integrity of the claimant's shoulder was good (Exhibit 19F p.3).

(AR 18). The ALJ's determination that plaintiff could perform a range of light work as of December 9th presupposes that she experienced medical improvement on or before that date. *See Buress*, 141 F.3d at 880. It appears that the ALJ relied on the December 9th physician's report as evidence of the "discrete improvement" that allowed plaintiff to resume work (AR 18). *Id.*

Upon reviewing the record, the court concludes that the ALJ's choice of December 9, 2003 as the benefits termination date is not supported by substantial evidence. The doctor's report

which forms the basis of the ALJ's decision does not establish that plaintiff experienced medical improvement to the extent that she could perform a range of light work. Rather, the results of the few clinical tests performed on that date appear no different from the results obtained on November 20, 2003.

At the time of the administrative hearing (February 6, 2004), the December 9th physician's report appears to have been the most recent medical record regarding plaintiff's physical impairment (AR 398).[2] The ALJ points to no other medical evidence to support his conclusion that plaintiff was able to perform work at the light exertional level as of December 9, 2003. Neither the RFC assessments nor the psychiatric evaluation performed by the state agency physicians support the December 9th termination date. The assessments and evaluation were completed more than one year before plaintiff's termination date when she was found to be under a disability (AR 267-95). Furthermore, plaintiff's testimony at the hearing does not indicate that her condition improved between the December 9, 2003 and February 6, 2004 (AR 401-11).

In concluding that the ALJ's decision is not supported by substantial evidence, the court is aware of defendant's contention that the doctor's failure to issue work restrictions on December 9, 2003 indicates that plaintiff could perform light exertional work as of that date. Defendant's Brief at 16. The court finds this argument unpersuasive. Defendant points out that plaintiff's work restrictions continued only through May 20, 2003 (AR 351). *Id.* However, the ALJ found that plaintiff was disabled from May 20, 2003 through December 9, 2003, in the absence of any work restrictions issued by her doctors. If the ALJ's decision was based on the absence of work

---

[2] The court notes that some records of plaintiff's treatment for her mental condition at the Meridian Professional Psychological Consultants extended beyond December 9, 2003 (AR 296-336).

restrictions, then a termination date of May 20, 2003 would have been more appropriate than the chosen date of December 9, 2003.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for redetermination of the date that plaintiff's disability terminated.

### B.     Plaintiff's WIB claim

Finally, the ALJ's determination that plaintiff was not disabled at the time of her ex-husband's death on March 9, 2004, barred plaintiff from asserting her WIB claim. *See* 42 U.S.C. § 402(e). If the Commissioner determines on remand that plaintiff was disabled after March 9, 2004, then it would be appropriate for the Commissioner to address the WIB claim at that time.

## IV.    Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a redetermination of the date that plaintiff's disability terminated.

Dated: January 23, 2006                          /s/ Hugh W. Brenneman, Jr.
                                                 Hugh W. Brenneman, Jr.
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).